## Q. P. McGHEE v. STATE.

No. A-7022. Opinion Filed Nov. 19, 1930.
On Rehearing Jan. 6, 1930.
(294 Pac. 649.)

J. G. Austin and Preston S. Davis, for plaintiff in error.

Edwin Dabney, Atty. Gen., and P. K. Morrill, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Craig county of aiding a felon, and was sentenced to serve a term of seven years in the state penitentiary.

The prosecution is based on section 1621, Comp. Stat. 1921, which is as follows:

"Any person who shall knowingly feed, lodge, clothe, arm, equip in whole or in part, harbor, aid, assist or conceal in any manner any person guilty of any felony, or outlaw, or fugitive from justice, or any person seeking to escape

arrest for any felony committed within this state or any other state or territory, shall be punished by imprisonment at hard labor in the penitentiary for a period not exceeding ten years."

A brief resume of such of the evidence for the state as deemed material to state is: That in 1926 one E. L. White had stolen an automobile at Fairfax, Okla., and had taken it to Ft. Scott, Kan., where, after an exchange of shots with officers, he was apprehended and the car recovered. That there was also apprehended with him one R. L. Ayres, wanted in both Ottawa and Pittsburg counties on charges of burglary. Defendant was a practicing attorney, and had formerly represented Ayres, and was his bondsman in Ottawa county. Soon after the arrest of White and Ayres and their incarceration at Ft. Scott, Ayres and probably White also called for defendant to represent them. He went to Ft. Scott, and they conferred. Te then returned to Miami, and on the following day his codefendant Burns, also an attorney, went to the village of Ketchum, in Craig county, and assisted in filing a criminal charge against White before their codefendant Sexton, who was a justice of the peace, and procured from him a warrant for White. The criminal complaint before Sexton was sworn to by one Lester Sloan, who had lost $350 in Liberty bonds in a burglarizing of the bank at Ketchum some three or more years before. This proceeding before Sexton in Craig county was without the knowledge either of the county attorney or sheriff of Craig county. Sloan was induced to sign the complaint on the statement to him by Sexton that the man who had his bonds was in jail at Ft. Scott and by so doing he would be brought back to Ketchum and the bonds recovered. The stolen bonds at the time, however, were in the possession of defendant and one Yeargain at Miami. At the same time White was wanted by the federal authorities

and also by the authorities of Osage county. Defendant, Sexton, and Frank Warner, a deputy sheriff of Ottawa county, went to Ft. Scott to get White and Ayres, who were turned over to them. Defendant at the time paid the Kansas officers $250 as a reward for the apprehension of White and Ayres. Accompanied by a Kansas police officer, they returned with them to Miami, Ottawa county, put them in jail there over night, and next day White was taken to Ketchum, was released on bond by Sexton, and he then faded from the picture. Sexton made no record of the case, if such it may be termed. Some of the facts shown by the state's evidence are admitted by defendant and explained; some are denied.

The first contention of defendant is that the information is indefinite and does not state facts sufficient to constitute a public offense. It is the theory of the state that this entire proceeding by which the custody of White and Ayres was procured by defendant, Burns, and Sexton was for the purpose of enabling them to escape and avoid prosecution. The information covers about five and a half type-written pages, and is too lengthy to be set out; it contains many repetitions, and is somewhat involved, and might well have been more definite. It charges in substance, the facts above stated; that is, that defendant and Burns were attorneys at law and Sexton a justice of the peace, having knowledge that White was an outlaw and fugitive from justice, and was guilty of a felony, and was wanted in the state of Oklahoma, and was seeking to escape prosecution and punishment, and had been apprehended and was in jail at Ft. Scott, Kan., without the knowledge of the county attorney or sheriff, and without any intention of prosecuting in such proceeding, they conspired together to procure a false and bogus complaint to be filed with their co-defendant Sexton against White and to have a false and

bogus warrant issued thereon, and with such warrant went to Ft. Scott, Kan., and there secured the person of White, brought him back to the city of Miami, held him in jail over night, and then took him before their codefendant Sexton at Ketchum and procured his release, and did thereby assist in liberating and discharging the said White.

The rules for criminal pleading in this state are quite liberal. Sections 2555, 2564, 2943, Comp. Stat. 1921; Warren v. State, 24 Okla. Cr. 6, 215 Pac. 635; Martin v. State, 35 Okla. Cr. 248, 250 Pac. 552; Scott v. State, 40 Okla. Cr. 296, 268 Pac. 312. Defendant is apprised that he is charged to have acted with his codefendants in aiding a fugitive to escape by the sharp practice of initiating a bogus prosecution before a justice of the peace and under such proceedings getting custody of such fugitive, thereby preventing delivery of him to the state or its officers who might honestly prosecute him. Any person of common understanding must know this from reading the information. Courts sometimes indulge the fiction of saying an indictment or information does not impart such knowledge, when it does so but where the allegations are verbose, involved, or inaptly stated. This information is not a model, but it is legally sufficient. See Cole v. State, 15 Okla. Cr. 361, 177 Pac. 129; State v. Franks, 21 Okla. Cr. 213, 206 Pac. 258; Huckaby v. State, 22 Okla. Cr. 376, 211 Pac. 525.

The next contention made is that the evidence is insufficient, that section 1621, supra, merely makes accessories after the fact guilty of a substantive offense and that the law and the construction placed thereon by other states applicable to accessories after the fact becomes applicable and must control in the construction of section 1621; that so construed and considered in order to convict there must be proof of direct personal assistance to

the fugitive to enable him to escape, citing 16 C. J. Criminal Law, § 133; State v. Doty, 57 Kan. 835, 48 Pac. 145; State v. Jett, 69 Kan. 788, 77 Pac. 546; People v. Pedro, 19 Misc. Rep. 300, 43 N. Y. S. 44; Street v. State, 39 Tex. Cr. R. 134, 45 S. W. 577; Hightower v. State, 78 Tex. Cr. R. 606, 182 S. W. 492; that this section was adopted by the territorial Legislature in 1903 to meet a condition under which a practice had grown up among the criminal element of Indian Territory in seeking refuge, aid, and comfort across the line in Oklahoma territory; that the statute was intended to put a stop to such condition; that the related statute, Comp. Stat. 1921, discloses this purpose, such related statute being sections 1522, 1524, 1611, 1622, 1649, 1651, and 1652.

It is argued that any other construction would make a felon of one who gave to the close member of his family food, clothing, shelter over night, or the like, or if he carried a message, assisted in making bond, gave him advice, or did such acts as are consonant with kindness and good heart; that the information alleges no personal aid given by defendant to White. The most favorable view of the substance of the charge is (we quote from defendant's brief) that:

"White stole a car in Osage county, Okla., and was arrested in Kansas. McGhee knew of the theft and his arrests, and was immediately fired with desire to help White; to that end he consulted Burns, got in touch with Sexton in some manner and between them all had Sloan swear out a warrant for White for robbery in Oklahoma without doing the county attorney the honor of consulting him, the whole purpose being to heap such fire of coals upon the head of White that the Osage authorities would forget their troubles. With this in view the said McGhee took Sexton and his warrant to Fort Scott, and there after a time they succeeded in showing a better right to White and

gained consent to have him sent back with Sexton which was done and he was lodged in pail at Miami, Okla., and the next morning he was allowed bond and released under bond. That Sexton thereafter did not properly pursue the case or report same."

Defendant then demands the state show one act on the part of defendant which falls within the condemnation of any decision of any court as being a crime of accessory after the fact or as being such crime under separate substantive law. Conceding that the construction of the law contended for is correct, in answer it may be said, though we repeat somewhat in doing so, that, if defendant, Burns, and Sexton were acting together, the acts of all are the acts of each one. It is held by many decisions of this court that slight evidence of collusion, that is, any evidence which fairly tends to prove a conspiracy, is all the law requires to admit the acts and declarations of a coconspirator; when such collusion is shown, any party to the conspiracy is considered in law as having been a party to the transaction, even though not present at the time of its commission. The evidence in this case strongly tends to show a concert of action and collusion between defendant and his codefendants. We gather from a careful reading of the record that defendant was, in fact, the master mind of the trio. Then if the plan is formed to prevent White, the fugitive from justice, from being prosecuted in Oklahoma, and the three for the purpose of carrying out such plan, without the knowledge of the county attorney or the sheriff, have a complaint filed and a warrant issued in Craig county, and without any intention of prosecuting the case so filed, but for the purpose of getting custody and of enabling him to escape, and with such warrant and for such purpose go into the state of Kansas and there the defendant, to procure the delivery of White to him and his codefendants, pays a reward to the officers

of Kansas, and defendant and his codefendant Sexton then take White in a car driven by defendant and return him to Oklahoma and enlarge him on bond without notice to the county attorney or sheriff and with no record of the proceeding before the justice, thereby preventing prosecution, there is personal physical aid. Since the evidence shows that the three jointly charged acted together to aid White to escape, we are constrained to hold that it is sufficient.

Errors in the admission of evidence and in the instructions of the court and in the failure to give requested instructions and other assignments are argued in the briefs. We have examined each of the assignments in detail; as is to be expected in the ruling on many closely contested points, there are errors here and there in the record. None of them is of sufficient importance to call for special discussion, and none of them discloses any material prejudice to defendant.

Upon a consideration of the entire record, we conclude that the information is sufficient to charge an offense under the statute, that the evidence sustains the charge, and that defendant was fairly tried.

The case is affirmed.

On Petition for Rehearing.

Plaintiff in error in his petition for rehearing earnestly contends that the statute upon which the prosecution is based, section 1621, Comp. Stat. 1921, is unconstitutional. This was not urged in the briefs in the first instance, so was not discussed in the opinion. The statute has been treated as a valid statute in the Cole Case, the Franks Case, and the Huckaby Case, cited in the opinion. We are not impressed with argument now made that the

statute is void. It is not in conflict with the federal or the state Constitution, and is valid.

DAVENPORT and CHAPPELL, JJ., concur.