MARVIN RUSSELL HARRIS v. STATE.

No. A-10983.   March 2, 1949.

(204 P. 2d 310.)

414

Kathryn Van Leuven and H. B. King, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendant in error.

JONES, P. J.  The defendant, Marvin Russell Harris, was charged by information and filed in the district court of Oklahoma county with the crime of rape in the first degree, was tried, convicted, and sentenced to serve a term of 15 years imprisonment in the State Penitentiary and has appealed.

Defendant contends that the information is defective and that the court erred in overruling his demurrer to the information.  The information omitting formal parts charges:

"On the 13th day of November, A.D., 1945, in Oklahoma County, State of Oklahoma, Marvin Russell Harris, whose more full and correct name is to your informant unknown, then and there being, did then and there

wilfully unlawfully and feloniously commit the crime of Rape in the First Degree in the manner and form as follows, to wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully, wrongfully and feloniously, and by means of force, overcoming the resistance and by means of threats of immediate bodily harm, accompanied by apparent power of execution, and preventing resistence by then and there holding and otherwise maltreating one Dora Zangari, and did then and there have and hold unlawful sexual intercourse with the said Dora Zangari, a female person of the age of 19 years, and not the wife of the said defendant, and the said defendant being a male person over the age of 18 years, said act of sexual intercourse being accomplished by the defendant after having by force overcome the resistance of the said Dora Zangari, and without her consent and against her will, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma."

In this connection, counsel for defendant, state that the information failed to charge intent or specify the time and place, and failed to allege that the prosecutrix was a married woman.

It is only necessary that an information inform an accused of the offense with which he is charged with such particularity as to enable him to prepare for trial and so defines and identifies the offense that if convicted or acquitted, he will be able to defend himself against any subsequent prosecution. Broaddus v. State, 66 Okla. Cr. 148, 90 P. 2d 457; McGhee v. State, 49 Okla. Cr. 387, 294 P. 649.

The information contains all of the essential elements necessary to constitute the crime of rape in the first de-

gree, and it certainly is sufficient to apprise the defendant of the nature of the charge so as to enable him to prepare his defense. The demurrer was properly overruled.

The principal contention of the accused is that the evidence is insufficient to sustain the conviction.

The prosecutrix testified that she was 19 years old and lived with her husband and two year old child in Midwest City; that on November 13, 1945, she had started to visit her aunt in Capitol Hill; that while waiting to catch a bus to Capitol Hill the defendant drove up, stopped his car, opened the door, and asked if she would like to ride to town; to which she replied "No, I was merely going to Capitol Hill. He said that is all right he would take me to Capitol Hill and I accepted". . She further testified that after driving a mile or two on the highway, the defendant turned and drove about one-half mile south and turned off the road to a secluded spot. As to what happened when defendant turned his automobile off on the side road, the prosecutrix testified:

"I asked him where he was going, and he said he was going to see a buddy. Then when he started to turn he told me I knew what he was going to do, then he stopped and turned there and was going to try to kiss me, and I wrenched at the door, and he caught hold of me and started to twisting my wrist to where I could not be in a position to fight, and I begged and pleaded with him to leave me alone, please leave me alone. He merely laughed at me. He said if I had a child it would be his baby. Then he kept on and told me if I didn't quit struggling—I just as well give in, because when he wanted something he would get it; he done it before. So, I kept fighting with him and everything, and he insisted, and he finally got awful mad, if I didn't give in he would hurt my arm. He said many people got killed

that way when they didn't give in when they were supposed to. So, I pleaded for sometime, scratching at him, and finally I gave in to him because I was afraid of him. Q. When the act you told us about was accomplished, were you in the front seat or the back seat of the automobile? A. In the back seat. Q. Did you or did you not feel the insertion? A. Yes, sir."

She further testified:

"Q. Did you or did you not make any attempt to get out of the automobile? A. Yes. I couldn't get the car door open. Q. Would that be from the right side? A. Yes, sir. Q. Did you have any wounds on your wrists or anywhere? A. Yes; my wrists—my wrists was terribly red and all where he had twisted them around, they were terribly sore."

The prosecutrix further testified that after the act was committed, the defendant drove her to Capitol Hill where she went immediately to her aunt's home and related what had occurred. Her husband and the officers were notified and she was taken to the hospital for an examination.

Doctor Frank Harbison testified that he saw the prosecutrix at the emergency ward of the Oklahoma General Hospital just a few minutes after she arrived; that he made an examination of the vagina and female parts and took what the Doctors call "a hanging drop" and in that hanging drop he found a male spermatoza which showed that she had had sexual intercourse not over six or twelve hours before that time. He further testified that he observed some red marks on her wrists.

Mrs. B. H. Staddard, the aunt of the prosecutrix, testified that on November 13, 1945, the prosecutrix came to her home in Capitol Hill; and that when she opened the door, prosecutrix was there crying and was so upset that she couldn't talk for a little while; that after the

prosecutrix became more composed, she related what had happened and the witness called her husband who notified the police and the witness accompanied the prosecutrix to the hospital where she was examined by the Doctor. She further testified that the arms of the prosecutrix were red.

The defendant testified that he was 22 years old; that on the date in question he had gone to the Atkinson Lumber Company at Midwest City to apply for a job; that on the way back to the city he noticed the prosecutrix walking along the street and offered her a ride and she accepted. He then stated that he turned off the highway about a mile or a mile and half east of Eastern avenue, and drove about eight city blocks; that prosecutrix asked him where he was going and he said "down the road a piece." He then testified:

"Q. Did she make any protest about riding down the road a piece with you? A. Not right then, no. Q. Then what happened? A. Well, I got on down and stopped, and she wanted to know what I was going to do, and I told her. Q. When you stopped, then what conversation took place? A. Well, I told her what I wanted, and we began to argue, and argued back and forth for sometime. Q. What do you mean by 'argue'? Tell the court what you mean by arguing. A. She kept saying 'No' and I would say 'Yes,' and she would ask me why."

Defendant further said that the argument continued for about five minutes and that finally the prosecutrix said "Well, I guess I might as well give up"; that she then got out of the car and into the back seat, removed her shoes, her pants and her hose, and that he started to proceed to accomplish the act of sexual intercourse with her and then stopped and she said "What is the

matter" and the defendant then told her it wasn't any good.

Defendant denied committing sexual intercourse with her and testified as follows:

"Q. Tell the jury, and explain to them if you can, how come that you did not actually have intercourse with her? A. Well, I started to, and I don't know, I just sort of come to myself and thought, 'This was not the right thing to do,' and I just got up and told her it wasn't any good. Q. You lost your desire to have sexual intercourse? A. Yes, sir; I lost the desire right then, was the reason I got up, I guess."

Defendant testified that he then took the prosecutrix to Capitol Hill and let her out at the corner of Southeast 29th street and Robinson avenue; that prosecutrix did not want to go home. He then testified:

"Q. Did she seem mad when you left that place out there where you had been? A. Yes; she did then. Q. But she seemed to get in a good humor before she got out at 29th and Robinson, is that right? A. I wouldn't say 'a good humor.' She just didn't seem mad. Q. Did she seem mad at all out there when you were out on Grand Boulevard? A. Not exactly, only when we was arguing, she probably got sore. Q. What did she get sore about? A. What I was asking her, I imagine. Q. What were you asking her? A. Asking her for a little."

In the case of Burtt v. State, 64 Okla. Cr. 68, 77 P. 2d 580, 584, this court stated:

"It is strongly urged by defendant in his brief that the law of this state is that in a case of rape that 'there must be the utmost of force and the utmost of resistance,' and cites the case of Sowers v. Territory, 6 Okla. 436, 50 P. 257, and Parker v. Territory, 9 Okla. 109, 59 P. 9. It will be noted that these cases were decided by the territorial court prior to statehood. In so far as they adhere to the old doctrine with its strict construction

that 'there must be the utmost of force and the utmost of resistance,' they have not been followed by this court since statehood, and are not in harmony with the true rule as now followed by the more modern decisions. In the case of Bulls v. State, 33 Okla. Cr. 64, 241 P. 605, 606, this court, speaking through Judge Doyle, says:

" 'The old rule of "resistance to the uttermost" is obsolete, and is repudiated by the more modern authorities. The law does not require that the woman shall do more than her age, strength, the surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. In reference to the degree of resistance required, the jury should be instructed that it is necessary, not that the prosecutrix should have made the uttermost resistance, but that she has made such resistance as she was capable of making at the time. See 33 Cyc. 1506, and cases cited.'

"And in Snider v. State, 40 Okla. Cr. 214, 267 P. 687, the court says:

" 'In this state to constitute rape by force it is not essential that resistance be to the utmost, but need be only such as to make nonconsent the actual resistance reasonably manifest.' "

Counsel for the defendant in their briefs stressed the fact that the prosecutrix removed her garter belt and her hose which indicated that she was acceding to the request of the defendant and that if the act was accomplished, it was not an act whereby the defendant had overcome her resistance by force or threats. The prosecutrix testified that the defendant held her arms continuously and twisted them. Even under the testimony of the defendant, the prosecutrix protested vigorously against his committing the act, and he testified that the act was never accomplished.

This is not as strong a rape case as many we have reviewed and we do not know what we would have done

if we had been on the jury. However, the jury heard the witnesses, saw their demeanor on the witness stand and on the disputed questions of fact have held against the accused.

Under the decisions hereinabove cited, it appears that the amount of resistance required on the part of the female necessarily depends upon the circumstances, such as the relative strength of the parties, the age and condition of the female, the uselessness of resistance and the degree of force or threats manifested. The resistance must be in good faith and not a mere pretense, or, as stated otherwise, it must be real and genuine and active, and not feigned or passive.

The element of fear evidently played a large part in overcoming the resistance of the prosecutrix. She related that the defendant said many people get killed when they don't give in when they are supposed to. Her physical condition at the time she arrived at her aunt's house wholly negatives any idea that she had performed a voluntary act of sexual intercourse with the defendant. Not only that, but the prosecutrix, together with her husband, had moved to the State of New York before the trial commenced, and she returned to Oklahoma from that state to testify against the accused.

When a case such as this arises and the female in stating the occurrence says that she did not consent and did resist until resistance became so useless as to warrant its cessation, can this court, after the jury have accepted her version of the transaction and the trial court has approved the verdict, say as a matter of law that there was no competent evidence to sustain the verdict of the jury. We think not.

We have examined the instructions and they appear to be substantially correct. There were no requested instructions by the defendant. The jury reported back several times that they were hopelessly deadlocked. It was apparent that they were reluctant to convict the defendant of rape in the first degree with a minimum punishment of 15 years. At one time, they reported that they had "voted to report a hung jury". The verdict that was received carried with it a recommendation from the jury that the judge suspend the sentence of the defendant. At the hearing on the motion for new trial and at the time sentence was pronounced, the trial court called attention to the statute, 22 O.S. 1941 § 991, authorizing trial courts to suspend the sentence of one convicted of crime and emphasized that because of previous convictions sustained by the accused for similar offenses, the court was unable to follow the recommendation of the jury and give the defendant a suspended sentence. Under those circumstances the only hope for clemency lies with the Chief Executive.

The judgment and sentence of the district court of Oklahoma county is affirmed.

BAREFOOT and BRETT, JJ., concur.